## Commonwealth *v.* McCusker et al., Appellants.

Argued November 14, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Michael von Moschzisker,* with him *Thomas D. Mc-bride* and *McBride, Lipschitz, Woolston, Berger & Bohlen,* for McCusker, defendant.

*John Patrick Walsh,* with him *Leon Rosenfield,* for McClain, defendant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for Commonwealth.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1950:

This is an appeal by the defendants from the judgment of the Superior Court affirming their convictions and sentences.

Defendants were jointly indicted on Bill No. 1159 upon the charge of taking a female child under the age of sixteen years for immoral purposes and of inveigling and enticing her for the purpose of sexual intercourse; and on Bill No. 1162 for aggravated assault and battery, and assault and battery with intent to rape. Both defendants signed a waiver of trial by jury.

After trial the court found both defendants guilty on Bill No. 1159 and each was sentenced to a term of not less than two and a half years nor more than five years in the Eastern State Penitentiary. On Bill No. 1162 McClain was found not guilty and McCusker was found guilty and received a consecutive sentence of not less than two and a half and not more than five years in the Eastern State Penitentiary. The appeals of both defendants were argued at the same time.

At about 10 P. M. on September 18, 1948, Patricia Bonner, aged thirteen years, left her home in North Philadelphia to visit a friend in Germantown. She became lost and finally boarded a route 47 trolley. She

alighted from this trolley at about 1 A. M. Sunday in South Philadelphia, a section of the city unfamiliar to her. She walked around for a while and becoming tired, she sat down on some steps to rest. A group of boys her own age passed her and she got up and started to walk again. The boys told her to go to a certain place, which was a warehouse yard. A group of "big" boys approached and the younger boys ran away. The younger boys were either in or near the warehouse yard when they saw the older boys approaching. The older boys brought Patricia into the warehouse shack, where she was discovered by the police officers. She testified that upon her arrival at the shack five or six of the boys either had intercourse with her or attempted to do so. A guard at the Marine Quartermaster's summoned the police when he saw the group entering the yard. The police officers came to the warehouse shack where they found McCusker "on top" of the child, who was lying on the floor of the shack with her clothes up around her neck. McCusker was immediately placed under arrest. Another of the group, a boy named Boyle, tried to escape but another officer captured him. The defendant Mc-Clain was found hiding under a truck approximately twenty-five feet from the place where McCusker and the girl had been found. The child's nose was bleeding and she had lost one shoe. She testified that the boys had beat her and the doctor, who examined her the day after the attack, testified that she had found bruises on the child's right hand, dorsal, and back of head and legs. McClain's shirt had light blood stains on its front.

McClain stated that it was usual for some undisclosed "benefactors" to leave a quantity of cold beer at the warehouse every Saturday night about that hour and his purpose in coming to the warehouse had been to get this beer but that when he saw the police he hid because he did not want to be "locked up."

McCusker announced to the police almost immediately after his arrest that "All you got on me is trespassing." Later he said to McClain, "What's the difference, we will only get two and a half to five years." The victim told the officers in the presence of the defendants that "they brung me here." The defendants did not deny this charge. McCusker testified that he had been with Boyle and another boy, and that Boyle had left them but returned later to report that there was a woman in this warehouse lot or yard. He claims that he went to the yard and when the police arrived, he ran into the shack and told the girl who was in there to hide if she did not want to be locked up. He denied having "touched the girl." The police officer testified that the defendants pretended not to know each other at first but it soon developed that they had been "bosom friends for years."

Dr. Killian testified that she had examined Patricia on September 20th and that "a rapid, complete examination was made and, so far as the private parts, there was recent posterior partial tear of the hymen which probably would not permit penetration."

The trial judge adjudged McCusker guilty of attempted rape. Since the victim could not identify McClain except by the fact that he was heavier than the others he was found not guilty on that charge. Each defendant unsuccessfully filed a motion for a new trial. The defendant appealed to the Superior Court and the convictions were affirmed. Appeals were allowed to this Court.

The first count in Bill No. 1159 was "taking of a female child under the age of sixteen for the purpose of sexual intercourse" and the second count was "enticing or inveigling a female child for the said purpose." Appellants contend that there was no "taking". The trial

judge decided that there was a "taking" of the girl from the yard into the shack. He said: "The taking occurred when the 'big' boys assumed command after routing the smaller boys and proceeding from the yard to the shack, —which the testimony showed was a considerable distance,—and thence some distance into the shack behind the packing cases."

The appellants contend that since the younger boys who had brought the girl to the yard had not been acting in concert with the appellant there was insufficient evidence to sustain the charge of "taking". The Superior Court said: "The statute makes it a crime *either* to 'take' a female child under sixteen years for the purpose of sexual intercourse, *or* to 'inveigle' *or* to 'entice' such child for that purpose. A discussion of the meaning of the word 'take' is found in Commonwealth v. Walker, 34 Pa. Superior Ct. 14. It includes a purely voluntary surrender of the girl's person to the defendant. The use of artifice, cajolery, and any persuasion or promises, also falls within its meaning or the meaning of the words 'inveigle' and 'entice'. Compulsion itself is included within the meaning of 'take', which comes from the Scandinavian root 'to grasp, grip, seize, lay hold of.' The German root is 'to put the hand on, to touch.' The Oxford Dictionary defines the transitive verb, inter alia, as 'to seize, to get into one's power.' We construe the word 'take' in the sense of 'to seize' or 'to get into one's power,' including therein either physical possession, or dominion without physical possession. When these defendants took control of this child for the purpose of sexual intercourse they did 'take' her within the meaning of the Act. These men compelled the submission of this child to their power and control. Thus the defendants did 'take' or 'inveigle' or 'entice' her for that unlawful purpose."

Appellants cite *Commonwealth v. Mermeda*, 94 Pa. Superior Ct. 522 (1928) for the proposition that "taking" means that there must be a movement of the girl from one place to another. In that case a thirteen year old girl was taken to the defendant's apartment by a third person who had "picked her up" on a street corner. The defendant gave the child two drinks and when she became "dizzy" from the liquor, he carried her into his bedroom and spent the night in the same bed with her. His conviction was upheld even though he had not personally brought her to his apartment. At page 524 the Court said: "The enticement prohibited by [one part of] the act may begin anywhere short of the place to which the female is enticed. The prohibition is against enticing her into a house of assignation or elsewhere. Elsewhere means any convenient place. An enticement from one room in a house to another for the purpose of sexual intercourse is enough."

The foregoing decision is of no avail to these appellants because the tribunal below correctly held that there *was* an actual movement of the child from the yard to the shack. Appellants' contention that the small boys took the girl into the shack and behind the packing cases is not supported by the facts. Since the small boys ran away when they saw the bigger boys approaching it is a legitimate inference that the former were not in the shack behind the packing cases where the officers found the child with the defendants; if they had been *there*, they would not have observed the approach of the larger boys. The girl upon questioning as to how she got into the shack said in the presence of the two defendants, and without contradiction, that "they brung me" there. There was sufficient evidence for the tribunal to decide that she had been moved into the shack by the defendants.

Even without that movement there would have been a felonious "taking" of the child. The Act * says (in one part): "Whoever takes a female child under the age of sixteen years for the purpose of prostitution or sexual intercourse . . . shall be sentenced to undergo imprisonment . . ." Any means, whether it be force, putting in fear, cajolery or artifice, used by anyone to compel or induce a female child to submit to sexual intercourse is a felonious "taking". The essence of the "taking" is the securing of the submission of the child to the taker's wicked will. A moving of the female child from one point to another is no more an ingredient of "taking" her than is the moving of a city that is "taken" by a hostile army an ingredient of *that* taking.

The second question presented in McCusker's appeal is whether his crime of taking should be merged in the crime of attempted rape so that the sentence and conviction on the former charge should be set aside.

The instant case is governed by the case of *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A. 2d 920, in which we said: "The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are 'successive steps in the same transaction' but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The 'same transaction' test is valid only when 'transaction' means a *single act*. When

---

* Section 508 of "The Penal Code" of 1939, P. L. 872, 18 P. S. No. 4508, reads as follows: "Whoever takes a female child under the age of sixteen years for the purpose of prostitution or sexual intercourse, . . . or inveigles or entices any such minor female child into a house of ill-fame, or of assignation, or elsewhere, for the purpose of prostitution or sexual intercourse, is guilty of a felony, and upon conviction thereof, shall be sentenced to undergo imprisonment, . . . for not more than five (5) years, or to pay a fine not exceeding two thousand dollars ($2,000), or both."

the 'transaction' consists of two or more criminal acts, the fact that the two acts are 'successive' does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, e.g., larcency is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge. If a defendant commits a burglary and while in the burglarized dwelling he commits the crimes of rape or kidnapping, his crimes do not merge, for neither of them is necessarily involved in the other. When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both.*"

In *Commonwealth ex rel. Shaddock v. Ashe*, 340 Pa. 286, 17 A. 2d 190 (1940) the relator had pleaded guilty to an indictment containing three counts, i.e., assault and battery with intent to commit rape; aggravated assault and battery and rape. He was sentenced on each of the three counts. He claimed that since they were all crimes growing out of the same transaction he should have received only one penalty. This Court so held, saying: "It follows that the relator having been sentenced for the most serious crime charged in the indictment could not also be sentenced for the lesser crimes which were only constituents of the major felony."

In *Commonwealth ex rel. Russo v. Ashe*, 293 Pa. 322, 142 A. 317 (1928) the relator was found guilty and sentenced on two counts in the indictment felonious assault with intent to murder and assault with intent to maim and disfigure. The Court held that the sentence on the latter charge must be stricken off saying: "Though separate counts of an indictment may properly charge the same state of facts as constituting different offenses (Com. v. Shutte, 130 Pa. 272; Henwood v. Com., 52 Pa. 424), yet where the distinct crimes set forth grow out of the same transaction, differing only in degree, only one

penalty can be imposed after conviction, and separate sentences for each offense charged, directing independent punishments to run consecutively are void as to all except that permissible upon conviction of the more serious charge. So a conviction for rape, and assault with intent to ravish, justifies a sentence for the punishment provided for the first named only: Harman v. Com., 12 S. & R. 69." See also 15 Am. Jur. Section 388, page 63.

If crime "X" is added to crime "Y" so as to constitute crime "XY" the guilty individual can be convicted *only* of crime "XY." Taking a female child for the purpose of having sexual intercourse with her is one crime. If the taker then attempts to fornicate with her, he has become an attempter of rape and the first crime is merged in the second one. If the attempt is successful, the attempter then ripens into a "rapist," and the preceding two crimes have merged in the crime of rape. In the instant case, the taking of the child was necessarily involved in the attempt to fornicate with her and since she was under the age of sixteen years, the charge of an attempt "to commit a rape" upon her was proved.

The judgment and conviction against McCusker on indictment No. 1159 is set aside and his sentence on that judgment is vacated.

McCusker's conviction of attempted rape on indictment No. 1162 was justified. That judgment is affirmed.

Appellant McClain's conviction on indictment No. 1159 was warranted by the evidence. His participation in the felonious taking of the child for the purpose of sexual intercourse brings his wrongful conduct within the proscriptions and penalties of Section 508 of "The Penal Code" of 1939.

The judgment against McClain on indictment No. 1159 is affirmed.