J-A27036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD MORGAN | |
| Appellant | No. 996 WDA 2014 |

Appeal from the Judgment of Sentence entered February 19, 2014
In the Court of Common Pleas of Butler County
Criminal Division at No: CP-10-CR-0000991-2011

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED DECEMBER 17, 2015**

Appellant, Ronald Morgan, appeals from the judgment of sentence entered in the Court of Common Pleas of Butler County on February 19, 2014 following his conviction of various sexual offenses and designation as a sexually violent predator (SVP).  Appellant asserts lack of jurisdiction, insufficiency of evidence, and evidentiary error.  Following review, we affirm.[1]

---

[1] On December 14, 2015, Assistant District Attorney William T. Fullerton of the Butler County District Attorney's Office filed a motion to withdraw in light of his impending departure from the District Attorney's Office effective January 4, 2016.  The motion is denied in light of our contemporaneous disposition of this matter.

Following a three-day jury trial in May 2013, Appellant was convicted of two counts of involuntary deviate sexual intercourse (IDSI), one count each of statutory sexual assault, aggravated indecent assault, and indecent assault, 104 counts of sexual abuse of children (photographing/videotaping/depicting on computer or filming sexual acts), 104 counts of sexual abuse of children (viewing/possessing child pornography), one count each of endangering the welfare of children and corruption of minors, and two counts of misdemeanor possessory drug offenses. With the exception of the drug convictions, all convictions involved offenses committed against the daughter (victim) of one of Appellant's friends, beginning when the victim was approximately eleven or twelve and continuing until she was fifteen.

Appellant was sentenced to an aggregate term of not less than 182 months and not more than 364 months in prison. He also was determined to be an SVP. Following denial of his amended post-sentence motion, Appellant filed a timely appeal in which he asks this Court to consider the following five issues, which we have reordered for ease of discussion:

1. Whether the trial court had jurisdiction over this case when none of the crimes or any overt act relating to any of the crimes charged in this case occurred in Butler County?

2. Whether the evidence adduced at trial was insufficient to convict Appellant [] of Count 1 and Count 2, both of which charged [IDSI], because the evidence was legally insufficient to prove penetration, however slight?

3. Whether the evidence was insufficient to prove Counts 6-213 because the trial evidence was insufficient to prove that a child was depicted in the photographs and videos and because there was no testimony at trial that correlated the admitted Commonwealth exhibits, the photographs and videos, to specific counts of the Information?

4. Whether the trial court erred in failing to rule on the Motion to Offer Evidence of Victim's Sexual Conduct Pursuant to 18 Pa.C.S.A. § 3104 thereby wrongfully denying [Appellant] the opportunity to confront and effectively cross-examine the alleged victim in this case?

5. Whether the Commonwealth failed to prove that [Appellant] was a sexually violent predator because the evidence was insufficient to prove that he possessed a mental abnormality and it ignored other factors that did not support such a determination?

Appellant's Brief at 6-7.

Appellant's first issue appears to assert a challenge to the Butler County trial court's jurisdiction over the case based on the fact none of the crimes or overt acts for which Appellant was convicted took place within Butler County. Although phrased as a jurisdictional challenge, Appellant's concise statement pursuant to Pa.R.A.P. 1925(b) frames this issue as a challenge to venue. The trial court found that Appellant never challenged venue prior to raising it in his 1925(b) statement, resulting in waiver. Trial Court Opinion (T.C.O.), 5/23/14, at 5 (citing *Commonwealth v. Kelley*,

664 A.2d 123, 126 (Pa. Super. 1995)).[2]  Even if not waived, Appellant is not entitled to relief on either jurisdictional or venue grounds.

This Court has recognized that "[a]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." ***Commonwealth v. Miskovitch***, 64 A.3d 672, 688 (Pa. Super. 2013) (quoting ***Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003)).  The Court of Common Pleas of Butler County unquestionably had jurisdiction over Appellant's case.  Therefore, as in ***Miskovitch***, "Appellant's claim only challenges the procedural aspect of venue, as it is clear that [the county where the charges were brought] would have subject matter jurisdiction even over violations of the Crimes Code committed exclusively and/or entirely within [another county]." ***Id.***

Concerning venue, Appellant argues his convictions should be reversed because the criminal conduct for which he was convicted "occurred in counties other than Butler County or [occurred] out of state."  Appellant's Brief at 19.  "Venue is predominately a procedural matter that 'relates to the right of a party to have the controversy brought and heard in a particular judicial district.'" ***Miskovitch***, 64 A.3d at 688 (quoting ***Bethea***, 828 A.2d at 1074).  While it is true that the majority of acts of sexual abuse took place in

---

[2] Our review of the record reveals that Appellant also raised the issue of venue in his amended post-sentence motion.  Amended Post-Sentencing Motion at 4, ¶ 7.

Allegheny County, with others taking place in Warren County, New York City and Atlanta, it is also true, as the trial court recognized, that "Butler County [was] the location from which [Appellant] would often transport the minor victim prior to abusing her, [and] the testimony of Trooper Birckbichler revealed that certain photographs of the minor victim were likely taken in Butler County." T.C.O., 5/23/14, at 5.

In **Miskovitch**, this Court stated:

Because Appellant's venue claim is exclusively procedural in nature, we look to Pa.R.Crim.P. 109 for guidance. Rule 109 provides that:

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, *and the defect is prejudicial to the rights of the defendant.*

Pa.R.Crim.P. 109 (emphasis added).

Thus, even assuming that venue was improper, Appellant must demonstrate prejudice in order to be entitled to relief, at least where, as was true in this case, the choice of venue is purely procedural, and not jurisdictional in nature. Indeed, the purpose of venue, apart from the manner in which it relates to subject matter jurisdiction, is a matter of convenience to the litigants. *See Bethea*, 828 A.2d at 1074–75 ("[V]enue pertains to the locality most convenient to the proper disposition of a matter[.]".

*Id.* at 689.

Appellant has not demonstrated—or even suggested—that any procedural defect was prejudicial to his rights. Nor did Appellant raise a

- 5 -

"defect" prior to the conclusion of the preliminary hearing, as required by Pa.R.Crim.P. 109.[3]  Appellant is not entitled to relief on his first issue.

In his second and third issues, Appellant contends the evidence was insufficient to support his convictions on Counts 1 and 2 (IDSI) and on Counts 6 through 213 (sexual abuse of children).  In **Commonwealth v. Segida**, 985 A.2d 871 (Pa. 2009), our Supreme Court explained:

> When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. **Commonwealth v. Pruitt**, 597 Pa. 307, 951 A.2d 307, 313 (2008).  The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.  **Commonwealth v. Kennedy**, 598 Pa. 621, 959 A.2d 916, 921 (2008), *cert. denied*, [556 U.S. 1258], 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009).

**Id.** at 880.  Further, "we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." **Commonwealth v. Rahman**, 75 A.3d 497, 501

_____

[3] Had Appellant timely challenged venue, the Commonwealth would have borne the burden of proof—by a preponderance of the evidence—to demonstrate venue was proper in Butler County.  **See Commonwealth v. Gross**, 101 A.3d 28, 33 (Pa. 2014).  Even if Appellant successfully challenged venue, the remedy would have been to transfer venue, not dismiss the case. **Id.** at 36.

(Pa. Super. 2013) (quoting **Commonwealth v. Pettyjohn**, 64 A.3d 1072, 1075 (Pa. Super. 2013) (additional citations omitted)).

Appellant's first sufficiency challenge is to Counts 1 and 2, both of which involved claims of IDSI. IDSI is defined, *inter alia*, as follows:

A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

* * *

(7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S.A. § 3123(a)(7).[4] "Deviate sexual intercourse" is defined as follows:

Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S.A. § 3101.

Appellant argues the evidence was insufficient to establish penetration with a foreign object warranting a conviction under Count 1 or to establish that Appellant engaged in deviate sexual intercourse per os warranting a

---

[4] Appellant does not contest that the victim was under the age of sixteen, that he is four or more years older than she, or that they were not married to each other.

conviction under Count 2. The record belies his assertions. As the trial court accurately summarized:

> The victim [], who was seventeen years old at the time of trial, testified that, beginning when she was eleven or twelve years old, she suffered an escalating course of sexual abuse at the hands of [Appellant] that continued until she was fifteen years old. Her testimony was that, at the beginning of the time during which the abuse occurred, [Appellant] would [lie] in bed with her while he was naked. She testified that [Appellant] would rub her "butt" and her "vagina" with his hand and or with "vibrators." During many of the sexual encounters, the victim testified, [Appellant] would use his camera to take pictures of her. [Appellant] went from using adult toys and objects on the victim to, as the victim testified, using his mouth and his penis on her vagina. The abuse occurred on numerous occasions and at various locations, including [Appellant's] home in Allegheny County, [Appellant's] camp in Tidioute, Pennsylvania, and at various hotels. She testified that [Appellant] engaged in sexual intercourse with her, beginning at approximately age thirteen or fourteen. When asked by counsel for [Appellant] to describe what the victim meant by the term "sexual intercourse," the victim replied by stating: "Touch me inappropriately to have sex with me whenever I didn't want to. Rape." The victim described that, on one particular occasion, [Appellant] "put himself on me[.] . . . He put himself on me and had sex." When asked "How so[?] . . . Well, did he use his fingers? His mouth? His lips? His penis?," the victim testified, "All of the above." She testified that [Appellant], on that occasion, penetrated her vagina with his penis. On the many occasions where sexual abuse took place, [Appellant] was acting as a person supervising the welfare of the victim. In addition to the testimony of the victim, the Commonwealth introduced numerous explicit photographs and videos of the victim that were seized from [Appellant's] home. The images and videos, at the minimum, corroborate the victim's testimony.

> The testimony of the minor victim provides sufficient evidence that [Appellant], an adult, penetrated her vagina orally and with a foreign object at a time when she was under the age of sixteen. The victim's testimony also established that [Appellant] penetrated her vagina digitally and with his penis. Coupled with the photographic and video evidence that was admitted at trial,

it cannot be maintained that the verdicts, relating to [IDSI] . . ., were against the weight of the evidence because the victim's testimony was "incredible, vague and unworthy of belief." In any case, the jury was free to believe or disbelieve the testimony of the victim. The jury chose to believe her testimony.

T.C.O., 5/23/14, at 2-4 (citations to Notes of Testimony omitted).

Appellant cites **Commonwealth v. Hawkins**, 614 A.2d 1198 (Pa. Super. 1992), in support of his contention that "mere kissing of the vagina does not constitute penetration" under Pennsylvania law. Appellant's Brief at 25. In **Hawkins**, this Court considered the sufficiency of evidence supporting Appellant's conviction for attempted IDSI and stated:

The crime of involuntary deviate sexual intercourse requires "some penetration however slight." 18 Pa.C.S. §§ 3101, 3123. Here, Hawkins argues that the evidence only established that he kissed the complainant's vagina. As such, Hawkins contends that the evidence was insufficient to prove that he intended to orally penetrate the complainant's vagina.

. . . .

The complainant testified that Hawkins kissed her vagina. From this evidence, the jury could certainly infer Hawkins's intent to penetrate her vagina with his tongue, or to force the act of cunnilingus upon her. **See Commonwealth v. Vanderlin**, 398 Pa. Super. 21, 35–37, 580 A.2d 820, 828–829 (1990) (the jury could conclude that defendant attempted involuntary deviate sexual intercourse from the evidence establishing that the defendant touched the victim's mouth with his penis); **see also Commonwealth v. Westcott**, 362 Pa. Super. 176, 523 A.2d 1140 (1987) (cunnilingus is one of the acts proscribed by section 3123 of the Crimes Code). We conclude, therefore, that the evidence was sufficient to support Hawkins's conviction for attempted involuntary deviate sexual intercourse. [**Commonwealth v. Fromal**, 572 A.2d 711 (Pa. Super. 1990)], **supra**.

**Id.** at 1199-1200 (footnote omitted). This Court has since clarified that:

> [I]n order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight. ***Commonwealth v. Poindexter***, 435 Pa. Super. 509, 646 A.2d 1211, 1215 (1994), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995). In order to establish penetration, some oral contact is required. ***See Commonwealth v. Trimble***, 419 Pa. Super. 108, 615 A.2d 48 (1992) (finding actual penetration of the vagina is not necessary; some form of oral contact with the genitalia is all that is required). Moreover, a person can penetrate by use of the mouth or the tongue. ***See In the Interest of J.R.***, 436 Pa. Super. 416, 648 A.2d 28 (1994), *appeal denied,* 540 Pa. 584, 655 A.2d 515 (1995) (stating "Deviate sexual intercourse is considered to have occurred if one's mouth or tongue penetrates the vaginal area of another").

***Commonwealth v. Wilson***, 825 A.2d 710 (Pa. Super. 2003) (quoting ***Commonwealth v. L.N.***, 787 A.2d 1064, 1070 (Pa. Super. 2001)). While ***Wilson*** and the cases cited therein address penetration with respect to intercourse *per os*, the same principles of contact with genitalia should apply as well to "penetration, however slight" with a foreign object, such as the vibrators described by the victim here.

Viewing the evidence and reasonable inferences in a light most favorable to the Commonwealth as verdict-winner, we find the trial court correctly determined that the Commonwealth established the elements of IDSI beyond a reasonable doubt, warranting convictions on Counts 1 and 2. Appellant's second issue fails for lack of merit.

In his third issue, Appellant argues the evidence was insufficient to support his convictions under Counts 6 through 213, *i.e.*, 104 counts of sexual abuse of children under 18 Pa.C.S.A. § 6312(b)(2)

- 10 -

(photographing/videotaping/depicting on computer or filming sexual acts) and 104 counts of sexual abuse of children under 18 Pa.C.S.A. § 6312(d) (viewing/possessing child pornography).

Pursuant to Section 6312(b)(2), "Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense." Further, pursuant to Section 6312(d), "Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense."

The trial court rejected Appellant's claims of insufficiency to support his convictions of child sexual abuse and accurately noted that "[t]he victim was clearly depicted in numerous photographs and videos that were introduced into evidence. The victim also testified to [Appellant's] habits regarding the taking and downloading of pictures at or near the times the sexual abuse took place." T.C.O., 5/23/14, at 4. Our review of the record leads us to conclude that the trial court correctly determined the evidence was sufficient to support the convictions.[5]

---

[5] The trial court also considered the possibility that some of the 104 images might not have depicted the victim or might not have been taken or filmed by Appellant, commenting:

*(Footnote Continued Next Page)*

- 11 -

In his fourth issue, Appellant asserts the trial court erred by failing to conduct an *in camera* hearing or rule on his motion to offer evidence of the victim's sexual conduct under the Rape Shield Law, 18 Pa.C.S.A. § 3104. In his brief, Appellant explains:

> At trial, the alleged victim testified that her sexual activity with [Appellant] began when she was approximately 11 or 12 years old. Defense counsel was in possession of evidence that the alleged victim had bragged publicly on a social media site that she lost her virginity when she was in the 9th grade to another person, not [Appellant], and that she had only had sex one time. This claims sexual activity occurred after the time she claims that she had sex with [Appellant.]

Appellant's Brief at 42 (citations to Notes of Testimony omitted). Appellant contends the trial court's inaction deprived him of the right to confront his victim, requiring a new trial.

In **Commonwealth v. K.S.F.**, 102 A.3d 480 (Pa. Super. 2014), a case on which Appellant heavily relies, this Court explained:

> Our standard of review for admission of evidence of a victim's prior sexual conduct is as follows:

*(Footnote Continued)* _____

> In any case, it is certain that there was sufficient evidence relating to sexual abuse of children with respect to at least some of the photographs and videos, and with respect to some of the photographs and videos, it is plain that the verdicts were not against the weight of the evidence. We note this because the sentences at Counts six through 109 were imposed concurrently with each other.

T.C.O., 5/23/14, at 4.

- 12 -

A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Id.* at 483 (quoting *Commonwealth v. Holder*, 815 A.2d 1115, 1118 (Pa.

Super. 2003) (additional citations omitted)).

The Rape Shield Law provides as follows:

**(a)** **General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b)** **Evidentiary proceedings.**--A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. **If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).**

18 Pa.C.S.A. § 3104 (emphasis added).[6]

"Although the literal language of the Rape Shield Law would appear to bar a wide range of evidence, courts have interpreted the statute to yield to certain constitutional considerations implicating the rights of the accused." **K.S.F.**, 102 A.3d at 483 (citing **Commonwealth v. Riley**, 643 A.2d 1090, 1093 (Pa. Super. 1994) (right to cross-examine witnesses)). This Court further explained:

> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. [**Commonwealth v. Black**, 487 A.2d 396, 401 (Pa. Super. 1985)]. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Id.**

**Id.** at 483-84.[7]

In **K.S.F.**, the appellant was convicted of IDSI and other sexual offenses against his stepdaughter, some occurring before she was sixteen and some before she was thirteen. Prior to trial, the appellant filed a motion to access his stepdaughter's profiles on Facebook, which he could not

---

[6] We have highlighted the second sentence of subsection (b) to underscore the fact a hearing is required only if the trial court determines the motion and offer of proof are sufficient on their faces.

[7] **See** note 5.

otherwise access because of privacy settings. The appellant alleged one of the profiles contained impeachable material: specifically, that the stepdaughter described herself as a virgin. The trial court denied the motion, finding the evidence inadmissible under the Rape Shield Law.

On appeal, this Court vacated the judgment of sentence and remanded with instruction to conduct an *in camera* hearing applying the three-prong balancing test outlined in ***Black***, after which the trial court could either grant a new trial or reinstate the appellant's judgment of sentence. The trial court complied. At the hearing, the "[s]tepdaughter testified that when she wrote on Facebook that she had never had sex before, she meant she had never had consensual sex." ***Id.*** at 482. The trial court determined the probative value of the evidence did not outweigh its prejudicial effect and reinstated the judgment of sentence. On return to this Court, we reversed the trial court's determination, finding "the trial court erred as a matter of law in weighing the probative value of the evidence against the prejudice of its admission." ***Id.*** at 484. The panel looked to our Supreme Court's ruling in ***Commonwealth v. Spiewak***, 617 A.2d 696 (Pa. 1992), in which the Court held that "rules excluding evidence cannot be mechanistically applied to abridge a defendant's right of confrontation by denying admission of highly reliable and relevant evidence critical to his defense." ***Id.*** (quoting ***Spiewak***, 617 A.2d at 701).

In *Spiewak*, the victim accused her stepfather of engaging in sexual activity prior to her sixteenth birthday. The appellant acknowledged having sexual relations with his stepdaughter after she turned sixteen—after he and his stepdaughter's mother had separated, but denied any sexual contact before she turned sixteen. The trial court did not allow the appellant to cross-examine the stepdaughter about a statement she made to a friend, admitting she had one sexual relationship prior to turning sixteen that involved an older man who was a friend of her stepfather. The Supreme Court reversed the appellant's judgment of sentence, finding that applying the Rape Shield Law violated the appellant's constitutional rights of confrontation and cross-examination.

The Court recognized that the victim's credibility was the critical issue, *id.* at 698, and held:

> The statute cannot be both shield and sword. Here a statute is so designed to protect the witness's interest in preventing prejudicial disclosure of the witness's past behavior. It cannot at the same time preclude a defendant from offering evidence which is so highly probative of the witness's credibility that such evidence is necessary to allow/permit a jury to make a fair determination of the defendant's guilt or innocence. The statute must yield to a defendant's basic constitutional right.

*Id.* at 702.

We find both *K.S.F.* and *Spiewak* factually distinguishable from the case before us. In *K.S.F.* and *Spiewak*, credibility of the complaining minor was the central issue in what can be described as "he said-she said" cases. There was no physical evidence to support or defeat the complainants'

- 16 -

claims of sexual misconduct. By contrast, here there was physical evidence in the form of scores of photographs and videos portraying the victim engaging in sexual activity—photographs and videos found in Appellant's possession. Appellant was not prevented from cross-examining the victim as to when the photographs or videos were taken, by whom, whether she and/or Appellant were portrayed in them, etc. His ability to cross-examine the victim effectively was not thwarted by precluding him from asking Appellant about an online post that was outweighed by overwhelming physical evidence introduced at trial. Allowing Appellant to introduce evidence of the victim's online posts indicating she lost her virginity to someone other than Appellant would not serve the same critical purpose as allowing testimony of inconsistent statements in **K.S.F.** or **Spiewak**. The proposed evidence was not "so highly probative of the witness's credibility that such evidence [was] necessary to allow/permit a jury to make a fair determination of the defendant's guilt or innocence." **Spiewak**, 617 A.2d at 702.

We find no abuse of discretion on the part of the trial court for reserving its ruling on Appellant's Rape Shield Motion until time of trial or for its ruling during trial to the extent it precluded Appellant from impeaching the victim or challenging her credibility by presenting evidence of sexual

conduct between the victim and anyone other than Appellant.[8]   Under the facts of the case, an *in camera* hearing was unnecessary, and the trial court properly sustained the Commonwealth's objection.   Appellant is not entitled to relief based on the Rape Shield Law.

In his fifth and final issue, Appellant claims the trial court based Appellant's SVP designation on "uncharged, unfounded and incredible evidence.   Specifically, the trial court relied on false, unreliable evidence that [Appellant] had engaged in improper conduct with another victim.   That evidence was hearsay and patently unreliable."   Appellant's Brief at 49.

The trial court rejected Appellant's claim, stating:

> [Appellant] asserts that the "factual basis for his designation as a sexually violent predator was based on uncharged, unfounded

---

[8] On direct examination, the victim recalled the circumstances under which she admitted to her adoptive father that Appellant had been abusing her. Her adoptive father called the victim's mother, who was out of town attending school, and told her she should return home immediately.   When the mother returned, the victim told her about the abuse.   Notes of Testimony (N.T.), Trial, 5/20/13, at 81-82.

On cross-examination, Appellant's counsel asked the victim why she did not confide in her mother about Appellant's actions and then asked if she ever confided in her mother on other occasions about issues involving sexual activity.   Counsel for the Commonwealth objected, arguing at sidebar there was no notice given as required under the Rape Shield Law and noting he objected to any further questioning about the victim's sexual activity with anyone other than Appellant.   Appellant's counsel replied, "I'm going to impeachment and credibility issue, Your Honor."   The trial judge responded, "It's not admissible." and instructed the jury that the witness's response was stricken from the record.   No further questioning was conducted along those lines and Appellant's counsel did not raise the issue of the pre-trial motion on which the trial court reserved its ruling.   N.T. Trial, 5/20/13, at 88-89.

and incredible evidence." That is not the case. While the uncharged conduct was considered by the [Sexual Offenders Assessment Board (SOAB)] evaluator, her testimony was that the uncharged conduct played little part in her determining that the [Appellant] was a sexually violent predator. She testified that absent the uncharged conduct, her conclusion would have been the same. The [c]ourt, in any event, did not rely on any uncharged conduct in finding the Commonwealth met its burden of demonstrating by clear and convincing evidence that [Appellant] met the criteria to be classified as a sexually violent predator.

T.C.O., 5/23/14, at 7.

As this Court recognized in **Commonwealth v. Prendes**, 97 A.3d 337

(Pa. Super. 2014):

A challenge to a determination of SVP status requires us to view the evidence:

[i]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.

The scope of review is plenary. "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence." **Commonwealth v. Fuentes**, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*), *appeal denied,* 608 Pa. 645, 12 A.3d 370 (2010) (emphasis in original).

*Id.* at 355-56 (some citations omitted). Further, "[a]s a general rule, [the] standard of review of a trial court's evidentiary ruling . . . is limited to determining whether the trial court abused its discretion." *Id.* at 356 (quoting **Commonwealth v. Dengler**, 890 A.2d 372, 279 (Pa. 2005)).

- 19 -

In accordance with 42 Pa.C.S.A § 9799.24(b), an SOAB member conducts an SVP assessment upon receipt of a court order for an assessment. The assessment is to include, but not be limited to, an examination of various factors that include, *inter alia*, the facts of the offenses, prior offense history, characteristics of the offender—including any mental abnormality, and factors relating to the risk of re-offense. **Id.** "The SOAB merely assesses the defendant, it does not perform an adjudicative function." **Prendes**, 97 A.3d at 357.

> To deem an individual a sexually violent predator, the Commonwealth must first show the individual has been convicted of a sexually violent offense as set forth in section 9799.14. Secondly, the Commonwealth must show that the individual has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP.

**Id.** at 357-58 (quotations, citations and brackets omitted).

> An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP.

**Id.** at 358 (citations omitted).

The record reveals that the trial court conducted an SVP hearing on February 19, 2014, during which SOAB member Julia Lindemuth testified that her review of the provided materials led her to conclude Appellant

suffered from a mental abnormality, *i.e.*, paraphilia not otherwise specified (NOS). N.T. SVP Hearing, 2/19/14, at 10. She explained that paraphilia NOS "very similarly mirrors pedophilia but that is a sexual attraction to prepubescent children." *Id.* at 10. Because the offenses for which Appellant was convicted occurred when the victim was approximately twelve to fifteen years old, she classified it as paraphilia NOS. *Id.* at 10-11. She stated that her conclusion was based on "the ongoing pattern [] of sexual abuse with the children for several years which included fondling, oral sex, penetration, intercourse, and pornography." *Id.* at 11.[9] She testified that paraphilias are lifetime disorders, *id.* at 11-12, and "the likelihood over time is that he would likely reoffend because it's a sexual deviant disorder that does not have a cure [] *per se*. *Id.* at 13. Finally, she explained her opinion, to a reasonable degree of professional certainty, that Appellant met the statutory definition of predatory, noting:

> He was a life-long trusted family friend. He had known the victim since birth and used that trust and status within the family to gain access to the victim. He spent many times alone with her, took her on trips, and because of that trusting family

---

[9] Ms. Lindemuth's reference to "children" is likely based on her review of allegations involving "CC." Ms. Lindemuth acknowledged that allegations involving CC were not involved in Appellant's trial and she was unaware of any charges filed against Appellant by any individual other than the victim. N.T. SVP Hearing, 2/19/14, at 21-22. In its opinion, the trial court confirmed that uncharged conduct was not considered in its SVP ruling. T.C.O., 5/23/14, at 7.

relationship he was able to offend, and it is my opinion that that is predatory.

***Id.***[10]

At the conclusion of the hearing, the trial court found "by clear and convincing evidence that [Appellant] meets the criteria to be classified as a sexually violent predator." ***Id.*** at 34. Our review of the record leads us to conclude the trial court did not abuse its discretion in designating Appellant an SVP. Therefore, Appellant is not entitled to relief on his fifth issue.

Each of Appellant's issues fails for lack of merit. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/2015

---

[10] Ms. Lindemuth testified that all of her opinions were held to a reasonable degree of professional certainty. N.T. SVP Hearing, 2/19/14, at 13.