COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael Wayne McCORMICK, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 30, 2000.

Filed April 6, 2001.

---

John F. Nelson, Assistant District Attorney, Chambersburg, for Com., appellant.

Eric J. Weisbrod, Waynesboro, for appellee.

Nancy H. Meyers, Public Defender, Chambersburg, for appellee.

Before HUDOCK, STEVENS, and MUSMANNO, JJ.

STEVENS, J.:

¶ 1 In this appeal, the Commonwealth challenges the order entered in the Court of Common Pleas of Franklin County dismissing homicide charges brought against Michael McCormick, Jr. We reverse and remand for further proceedings.

¶ 2 The relevant facts and procedural history are as follows: In March of 1979, Alan Bennett Cosey died as a result of a gunshot wound to the chest. The police questioned Mr. McCormick with regard to Mr. Cosey's death, and Mr. McCormick informed the police that he was not present during the shooting, but that he found the body. N.T. 12/9/99 at 12–13. After further investigation, Mr. Cosey's death was ruled a suicide, and the case was closed. N.T. 12/9/99 at 13.

¶ 3 Subsequently, in July of 1997, a private investigator contacted the police and told them that, based on statements made by Mr. Cosey's widow, he believed Mr. Cosey did not commit suicide. N.T. 12/9/99 at 31. As such, the police reopened the case, including questioning Mr. McCormick again. N.T. 12/9/99 at 31–32.

¶ 4 While being questioned by the police on February 4, 1998, Mr. McCormick admitted that he was present when Mr. Cosey was shot. N.T. 12/9/99 at 34–35. However, he maintained that Mr. Cosey shot himself. N.T. 12/9/99 at 35. On February 6, 1998, Mr. McCormick admitted that he shot Mr. Cosey because Mr. Cosey wanted to die. N.T. 12/9/99 at 37–38. Immediately after Mr. McCormick admitted that he shot Mr. Cosey, he was arrested and charged with homicide. N.T. 12/9/99 at 39.

¶ 5 Mr. McCormick filed a "Motion to Dismiss Based Upon Excessive and Prejudicial Delay Between the Criminal Incident and Arrest of Defendant." On December 9, 1999, a hearing was held on the motion, and, on March 20, 2000, the trial court granted Mr. McCormick's request. This timely appeal by the Commonwealth followed. The trial court ordered the Commonwealth to file a Pa.R.A.P.1925(b) statement, the Commonwealth filed the re-

quired statement, and the trial court filed an opinion.

¶ 6 On appeal, the Commonwealth advances two arguments: (1) This Court's decision in *Commonwealth v. Scher*, 732 A.2d 1278 (Pa.Super.1999), *appeal granted*, 561 Pa. 693, 751 A.2d 189 (2000), was improper, and (2) the trial court erred in applying the standard enunciated in *Scher*.[1] We agree that the trial court erred in applying the holdings therein to the case *sub judice*.

¶ 7 In order to show that a defendant's due process rights have been violated due to a pre-arrest delay, and that the criminal charges should be dismissed, a defendant must show both prejudice to his or her right to a fair trial and that the reasons for the delay were improper. *Scher, supra.* In determining whether the delay by the prosecutor was proper, this Court may consider any intentional delay by the prosecution to gain a tactical advantage over the accused, and any negligent conduct by the prosecution in failing to pursue a reasonably diligent criminal investigation. *Scher, supra.*

¶ 8 In the case *sub judice*, the Commonwealth does not dispute the trial court's conclusion that the pre-arrest delay was prejudicial to Mr. McCormick. Rather, the Commonwealth argues that the trial court erred in concluding that the reasons for the delay were improper.

¶ 9 As indicated previously, when the police initially investigated Mr. Cosey's death in 1979, Mr. McCormick told the police that he was not present during the shooting. After further investigation, the police ruled Mr. Cosey's death a suicide and closed the case. When the police received information from a private investigator in 1997, the case was reopened, and Mr. McCormick was again questioned about the crime. Mr. McCormick initially admitted that he was present during the shooting, but did not participate in the shooting. Subsequently, Mr. McCormick admitted that he shot Mr. Cosey.

¶ 10 Based on the aforementioned, we conclude that the Commonwealth did not intentionally or negligently cause an unreasonable delay in arresting Mr. McCormick. Any delay was caused by Mr. McCormick's own lies to the police. Moreover, the record shows the police followed all appropriate leads at the time of the original investigation, and reopened the case when new information became available.

¶ 11 For all of the foregoing reasons, we reverse and remand for proceedings consistent with this Opinion.

¶ 12 Reversed; Remanded; Jurisdiction Relinquished.

¶ 13 MUSMANNO, J., files a dissenting opinion.

MUSMANNO, J., Dissenting:

¶ 1 I am constrained to dissent based upon our Court's recent holding in *Commonwealth v. Scher*, 732 A.2d 1278 (Pa.Super.1999). Although *Scher* is pending before the Pennsylvania Supreme Court[2], we are bound by its holding until the Supreme Court issues its decision. *Scher* requires us to conclude that Michael Wayne McCormick's ("McCormick") due process rights were violated by the excessive pre-arrest delay, and that the trial court properly dismissed the charges against him.

---

1. As the Commonwealth properly notes, this panel may not overrule the prior panel's decision in *Scher*. Also, *Scher* is presently before the Pennsylvania Supreme Court.

2. The Pennsylvania Supreme Court granted allowance of appeal in this case, and the case was argued before the Court on May 2, 2000.

¶2 The determination of whether pre-arrest delay is considered reasonable under the facts of a particular case is within the discretion of the trial court. *Commonwealth v. Montalvo*, 434 Pa.Super. 14, 641 A.2d 1176, 1182 (1994). As this is a question of law, this Court must review the entire record to determine whether the trial court abused its discretion. *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596 (1998). After reviewing the record in its entirety, I conclude that the trial court did not abuse its discretion in determining that the prosecution was negligent for its *nineteen-year* delay in arresting McCormick.

¶3 This case is clearly governed by our holding in *Scher*. In that case, Martin Dillon died in 1976 of a gunshot wound inflicted by a gun owned by the defendant, Stephen Scher. The death was ruled an accident until 1996, when Scher was arrested and charged with homicide. At trial, Scher was convicted by a jury, and sentenced. Our Court reversed the judgment of sentence, holding that Scher's constitutional right to due process was violated as a result of the twenty-year delay in arrest, and that the delay was both improper and prejudicial to Scher's ability to present a defense. *Scher*, 732 A.2d at 1287.

¶4 As we noted in *Scher*, while there is no statute of limitations for murder, persons accused of crimes are afforded the right to due process. *Id.* at 1278. Prior to *Scher*, the Pennsylvania Supreme Court decided, in *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596 (1998), that the constitutional right to due process "protects defendants from having to defend stale charges, and criminal charges should be

dismissed if improper pre-arrest delay causes prejudice to the defendant's right to a fair trial." *Id.* at 51, 713 A.2d at 600. Both *Scher* and *Snyder* follow the United States Supreme Court cases of *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) and *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), which have concluded that, to succeed on a claim that pre-arrest delay violates due process, a defendant must show both prejudice to his or her right to a fair trial, and that the reasons for the delay were improper.[3] However, neither the Pennsylvania Supreme Court nor the United States Supreme Court has set forth a clear standard for determining what constitutes improper conduct on the part of the prosecution. *Scher* expressly addressed this issue, holding that:

> [W]here there has been an excessive and prejudicial pre-arrest delay, we will not only inquire as to whether there has been any intentional delay by the prosecution to gain a tactical advantage over the accused, but we will also consider whether the prosecution has been negligent by failing to pursue a reasonably diligent criminal investigation.

*Scher*, 732 A.2d at 1283.

¶5 Under the first prong of the *Scher/Snyder* test, the majority expressly concedes that McCormick would be prejudiced in his right to a fair trial, due to the numerous witnesses who have died, or who have no recollection of the events of Alan Bennett Cosey's ("Cosey") death, and the evidence that has been destroyed due to the passage of time. However, I disagree with the majority's analysis in applying the second prong of the *Scher/Snyder* test,

---

**3.** Our Supreme Court has held that Article 1, Section 9 of the Pennsylvania Constitution, commonly referred to as the Due Process Clause, provides defendants with the same

protections as its federal counterpart in the area of pre-arrest delay. *Snyder*, 552 Pa. at 54, 713 A.2d at 602 (1998).

because the record reflects that the prosecution's delay was patently negligent.

¶ 6 The Commonwealth contends that its delay is proper because, despite the prejudice to McCormick, the Commonwealth has uncovered evidence that it did not possess in 1979. This purported new evidence consists of two inculpatory statements made by McCormick in February 1998, when the investigation was reopened.[4] The trial court found that this evidence could have been obtained in 1979, with a more diligent investigation. As the trial court stated, "Nothing prevented the Commonwealth from obtaining such inculpatory statements [from McCormick] in the intervening nineteen (19) years. It would appear that the inculpatory statements were available for the asking!" Trial Court Opinion, 3/20/00, at 15. The trial court found that the Commonwealth was not diligent in pursuing the investigation at the time of Cosey's death:

> The Court finds that the Commonwealth has failed to present a proper justification for the nineteen (19) year pre-arrest delay when during the first eighteen (18) years, the investigation remained closed and dormant and no new evidence—evidence that was not readily available in 1979—has been discovered.

Trial Court Opinion, 3/20/00, at 17.

¶ 7 We agree with the trial court's conclusion. The record contains overwhelming evidence that the investigation was closed prematurely in 1979, and that investigators expressed severe misgivings about the ruling that Alan Bennett Cosey ("Cosey") had committed suicide. Such misgivings included suspicions raised by Chief Jude T. Walsh of the Waynesboro Police Department, who headed the investigation, and Trooper Paul R. Ciprich who was responsible for the case on behalf of the Pennsylvania State Police. The trial court summarized a letter from Chief Walsh to the coroner, in which Chief Walsh raised the following concerns:

> My concern is; how can a person shoot himself in the chest, fall to the floor, the gun remaining in the hand in such an unusual manner; the lack of sufficient nitric acid on the hands of Alan B. Cosey to be consistent with gunshot residue (especially this type of gun powder and fire arm [a Civil War replica ball and cap black powder revolver owned by Cosey], how the hammer is laying on a full chamber, with the next chamber on empty?

Trial Court Opinion, 3/20/00, at 16.

¶ 8 Similarly, there were discrepancies regarding the location of the revolver, and whether or not gunpowder residue remained on Cosey's hands. Also, Vickie Lemmon, Cosey's estranged wife, testified that she did not remember anything of importance in 1998 that she did not know in 1979. N.T., Omnibus Pretrial Motion Hearing, 12/9/99, at 103–04.

¶ 9 Most importantly, Chief Walsh suspected foul play, and held suspicions about McCormick during the investigation. N.T., Omnibus Pretrial Motion Hearing, 12/9/99, at 26–27. Despite all of these facts, the Commonwealth failed to re-interview McCormick in 1979, but instead, waited until 1998.

¶ 10 Thus, the majority's conclusion that "the record shows the police followed all appropriate leads at the time of the original investigation" is, at the very least, inexplicable. Even a cursory review of the record clearly shows that the police did not thoroughly investigate their suspicions re-

---

4. We note that the statements are the subject of suppression challenges in McCormick's Omnibus Pre Trial Motion. These challenges were not addressed by the trial court, because it decided this case by granting McCormick's Motion to Dismiss.

garding McCormick.  Similarly, the majority's contention that "any delay was caused by McCormick's own lies to the police," is unreasonable.   First, investigators *did* have suspicions of McCormick in 1979. Moreover, it is simply unrealistic to assume that a murder suspect will assist the police in his own conviction.  While a prosecution may be hindered by lies, the Commonwealth's job, in its investigations, is to get beneath the surface of possible deception by those involved.

¶ 11 In sum, I believe that the prosecution's delay was negligent, and that McCormick should not now be required to defend these charges.