J-S42036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TODD RAE TARSELLI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: TODD RAE TARSELLI | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 85 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 15, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-MD-0000295-1992

BEFORE: LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: JANUARY 28, 2025**

Appellant, Todd Rae Tarselli, appeals from the August 15, 2023 aggregate judgment of sentence of 52½ years' to life imprisonment, imposed upon resentencing after this Court vacated his mandatory sentence of life incarceration, without the possibility of parole ("LWOP"), pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Appellant argues that his new sentence amounts to a *de facto* life term that is manifestly excessive and violates *Miller*. He also contends that the trial court erred by not resentencing him for his convictions of robbery, 18 Pa.C.S. § 3701(a)(1)(i), and prohibited offensive weapons, 18 Pa.C.S. § 908(a). After careful review, we discern no illegality or abuse of discretion in the court's resentencing Appellant to a term of 40 years' to life imprisonment for his murder conviction. However, we agree with Appellant

that the court erred by not resentencing him on all his convictions and, thus, we vacate his judgment of sentence and remand for resentencing.

The trial court thoroughly detailed the pertinent facts and procedural history of Appellant's case, as follows:

On November 5, 1992, [Appellant] entered a guilty plea to first[-]degree murder, robbery[,] and prohibited offensive weapons. These charges resulted from the robbery of a Kentucky Fried Chicken [("KFC")] restaurant in the City of Hazleton on January 23, 1992. During the robbery, [Appellant] took the life of the seventeen[-]year[-]old manager of the restaurant, Mark Bunchalk, by shooting him and strangling him with a telephone cord.

[Appellant] was initially sentenced to life imprisonment for the murder, [10] to [20] years['] consecutive [incarceration] for the robbery [offense,] and [2½] to [5] years['] consecutive [incarceration] for the … weapons [offense]. A fine of $25,000.00 was imposed on the robbery charge[,] along with a fine of $10,000.00 on the weapons charge. On appeal, the Superior Court of Pennsylvania vacated the sentences and remanded for resentencing due to the trial court's failure to inquire as to … [Appellant's] ability to pay the fines and state [Appellant's] prior record score or the applicable sentencing guideline ranges.

On September 22, 1993, [Appellant] was resentenced to the same terms of imprisonment. No fines were imposed. [Appellant] again appealed to the Superior Court[,] which affirmed his judgment of sentence on September 19, 1994. [*See Commonwealth v. Tarselli*, 652 A.2d 411 (Pa. Super. 1994) (unpublished memorandum)]. A petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on April 24, 1995. [*See Commonwealth v. Tarselli*, 658 A.2d 794 (Pa. 1995).]

[Appellant filed his] first petition for post[-]conviction collateral relief [under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,] … on July 30, 2012. In the petition, [Appellant] alleged that his guilty plea was unknowing and involuntary due to his juvenile status at the time of the plea. He also alleged that he was entitled to be resentenced based on the holding of the United States Supreme Court in *Miller*…. [Appellant's] petition was

denied by order dated June 24, 2013[,] as being untimely filed pursuant to 42 Pa.C.S.[ §] 9545 with no exception to the timeliness provision proven.

The Superior Court of Pennsylvania affirmed the June 24, 2013 order denying [Appellant's] PCRA petition as untimely. [*See Commonwealth v. Tarselli*, 104 A.3d 48 (Pa. Super. 2014) (unpublished memorandum).] On December 10, 2014, the Supreme Court of Pennsylvania denied his petition for allowance of appeal. [*See Commonwealth v. Tarselli*, 104 A.3d 525 (Pa. 2014).]

A second motion for post[-]conviction collateral relief was filed by [Appellant] on February 16, 2016. … A hearing was held on January 4, 2018[,] to address the timeliness of the issues raised by[] and on behalf of … [Appellant]. Following the hearing, [Appellant's] motion for post[-]conviction collateral relief was determined to be timely as to his claim that he was under the age of [18] at the time of the homicide[,] which would require that he be resentenced. The motion was denied as untimely with regard to [Appellant's] claims as to certain rights he would have possessed as a juvenile regarding his guilty plea, *Miranda*[1] warnings[,] and consent to search items of his personal property.

A second hearing was held on August 6, 2019[,] and August 7, 2019[,] to address [Appellant's] age at the time of the homicide and his claim that he was under the age of [18]. [The PCRA court concluded that Appellant] failed to establish that he was under the age of [18] at the time of the homicide[,] so his motion for post[-]conviction collateral relief, addendum thereto[,] and supplemental petition were denied by order dated February 3, 2020.

On February 20, 2020, a notice of appeal was filed on [Appellant's] behalf. In a memorandum opinion filed on July 7, 2021, the Superior Court of Pennsylvania determined that [Appellant] "established that it is more likely than not that differences in [Korean] cultural norms regarding age caused him to be regarded as approximately one year older than he actually was at the time of his adoption [in Korea], and because he timely filed the present petition, we reverse and remand for resentencing consistent with the requirements of *Miller* and *Montgomery*."

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[***Commonwealth v. Tarselli***, No. 360 MDA 2020, unpublished memorandum at 9-10 (Pa. Super. filed July 7, 2021) ("***Tarselli I***").] On May 25, 2022, the Supreme Court of Pennsylvania denied the Commonwealth's Petition for Allowance of Appeal. [***See Commonwealth v. Tarselli***, 279 A.3d 35 (Pa. 2022).]

In a letter dated September 1, 2022, the Commonwealth indicated that it would not be seeking a[n LWOP] sentence for … [Appellant]. A hearing was held on August 9, 2023[,] to give the parties an opportunity to present testimony, exhibits and argument regarding [Appellant's] resentencing[,] which took place on August 10, 2023.

At the August 9, 2023 hearing, [Appellant] testified and five additional witnesses were presented on his behalf. Four witnesses testified for the Commonwealth and two exhibits were admitted without objection.

Initially, Bonnie Kerness was called as a witness by … [Appellant]. She was employed at the American Friends Service Committee['s] prison watch program. N.T.[,] 8/9/23[-8/10/23] at 6. Ms. Kerness became familiar with … [Appellant] and had known him for more than [27] years. ***Id.*** at 7. She described … [Appellant's] desire to improve himself and become a better person. ***Id.*** at 8. Ms. Kerness testified regarding … [Appellant's] artwork and how he has changed for the better. ***Id.*** at 8-10. She described … [Appellant] as an "intelligent, mature, talented, loving[,] and loved human being who has the ability to support himself economically." ***Id.*** at 11.

[Appellant's] second witness was Kristi Brian. Ms. Brian was employed at the University of New Orleans and the Transformative Teaching Collective which is social justice education. ***Id.*** at 14. She met … [Appellant] while completing her doctoral research in cultural anthropology at Temple University. ***Id.*** Ms. O'Brien testified regarding her [20-]year relationship with … [Appellant] and how he has become a member of her family. ***Id.*** at 15. She described [Appellant's] efforts to rehabilitate himself and the community he has created while incarcerated. ***Id.*** at 19-21.

[Appellant's] third witness was Ben Wang. Mr. Wang was the director of special initiatives at Asian Health Services in Oakland, California. ***Id.*** at 24. He first met … [Appellant] in 2004 while working together on a project for a book. ***Id.*** at 25. Mr. Wang was willing to support [Appellant] "on his healthy re-entry by sharing resources, emotional support, research support and

- 4 -

referrals to other organizations." *Id.* at 27. He indicated that the recidivism rate is much lower than state or national averages when offenders are provided with the type of support he would provide … [Appellant]. *Id.* at 27-28.

The fourth witness presented by [Appellant] was Jennifer Lahn. Ms. Lahn was employed by Let's Get Free: The Women and Trans Prisoner Defense Committee and she had known [Appellant] since 2001. *Id.* at 31, 33. She visited [Appellant] while he was incarcerated[,] and they developed a close relationship while working on the prison poster project. *Id.* at 34. Ms. Lahn considered [Appellant] to be a friend and she was willing to allow him to live with her when he is released from incarceration. *Id.* at 35-36. Her testimony disclosed that [Appellant] was a part of the Let's Be Free program community which provides financial support, mental health support, emotional support, mentorship[,] and stewardship. *Id.* at 37. Ms. Lahn felt that [Appellant] took advantage of the opportunities provided to him by the criminal justice system and on his own. *Id.* at 44. She has seen [Appellant] grow emotionally and support others in the prison community. *Id.* at 44-45.

[Appellant's] final witness was Robert Holbrook. Mr. Holbrook was a former prison inmate who spent a total of ten years in solitary confinement[.] *Id.* at 46. He was the executive director of the Abolitionists Law Center and a lecturer of law at the University of Pennsylvania. *Id.* After describing what led to his incarceration and his time in solitary confinement, Mr. Holbrook testified that he met [Appellant] while [he was] an inmate at the State Correctional Institution at Greene when he was 27 or 28 years old. [*Id.*] at 47-50. He recalled meeting [Appellant] in 2003 while they were both in solitary confinement. *Id.* … at 52. He described the relationship they developed after [Appellant] was released from solitary confinement. *Id.* at 53[-]54. Mr. Holbrook also described life after his release from prison[,] including the supervision. *Id.* at 63-64. He considers [Appellant] to be a close friend who would be provided with more accessibility to assistance. *Id.* at 66. Mr. Holbrook has an interest in [Appellant's] success and he would provide him with referrals to organizations that mentor inmates who have been released from incarceration. *Id.*

[Appellant] testified on his own behalf. He apologized to the family of the victim and indicated that he was [a]shamed by what he did. *Id.* at 70. He understood the significance of what he had

done and stated that he would always be available to the family to help the healing process. *Id.* at 71. It is clear that [Appellant] is remorseful and has accepted responsibility for his actions. He also has a community of individuals and resources available to him when he is released from prison.

The four witnesses presented by the Commonwealth were also considered by the [c]ourt. Detective Edward Harry was the lead investigator in the homicide which occurred in January of 1992. *Id.* at 25. He testified regarding the fear in the community and the fear in the school district. *Id.* at 76. He also testified that students were affected because of their relationship with the victim. *Id.*

Michael Bunchalk was the second witness for the Commonwealth. His brother was the victim of the homicide. *Id.* at 78. He testified regarding the relationship he had with his brother as well as the effect the murder has had on him. *Id.* at 78-79. He also testified as to how he feels about [Appellant]. *Id.* at 79.

The Commonwealth's third witness was Carol Bunchalk, the mother of the homicide victim. *Id.* at 80. She testified how her life has been affected by her son's murder. *Id.* at 81-84. Ms. Bunchalk continues to love and miss her son[,] and she struggles with the pain of his death. *Id.* at 83-84.

Dr. Tara Bunchalk was the final witness presented by the Commonwealth. She was the sister of the homicide victim. Dr. Bunchalk read a statement prepared by her best friend, Kristen Hughes. *Id.* at 86-87. Ms. Hughes was fourteen years of age at the time of the murder[,] and she described how Dr. Bunchalk and her family were affected by it. *Id.* at 87-89. Dr. Bunchalk was also fourteen at the time of the murder and she described her memories of growing up with her brother and how his death has affected her and the Bunchalk family. It is obvious that … [Appellant's] actions have had a significant, painful[,] and lasting impact on the Bunchalk family.

After testimony concluded, the Commonwealth submitted two exhibits. Commonwealth Exhibit 1 was a copy of [Appellant's] misconduct report from the Department of Corrections. Commonwealth Exhibit 2 was a copy of the transcript from [Appellant's] guilty plea and initial sentencing.

Prior to sentencing [Appellant] on August 10, 2023, all of the testimony presented by [Appellant] and the nine additional

- 6 -

witnesses was carefully considered[,] along with the two exhibits and the arguments of counsel. [Appellant] was sentenced to 480 months to life on the first[-]degree murder plea in accordance with **Miller** and **Montgomery** as required by the Superior Court of Pennsylvania. The consecutive [10] to [20] year sentence on the robbery and the consecutive [2½] to [5] year sentence on the … weapons [charge] were left undisturbed by the Superior Court[,] so resentencing on those offenses was not required.[2]

On August 22, 2023, a motion to modify sentence was filed on behalf of [Appellant]. This motion was denied on December 18, 2023. A notice of appeal was filed on January 18, 2024. After receiving [Appellant's] notice of appeal, an order was issued[,] which required that a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) be filed by [Appellant] within [21] days. A concise statement was filed on February 7, 2024.

Trial Court Opinion ("TCO"), 3/8/24, at 1-7 (unnumbered). The trial court

filed its Rule 1925(a) opinion on March 8, 2024.

Herein, Appellant states the following issues for our review, which we

have reordered for ease of disposition:

1. Did the [trial] court err and abuse its discretion by imposing an aggregate sentence of 52½ years to [l]ife since this sentence constitutes a *de facto* sentence of … []LWOP[] due to [Appellant's] age and life expectancy as an incarcerated individual?

2. Was the *de facto* LWOP sentence imposed by the [trial] court in violation of **Miller** … and **Montgomery** and their progeny?

3. Did the [trial] court err and abuse its discretion by imposing a sentence of 480 months to [l]ife imprisonment on Count 1 – Homicide of the First Degree – since this individual sentence constitutes a *de facto* sentence of LWOP given [Appellant's] age

_____

[2] The court's August 10, 2023 written sentencing order incorrectly stated Appellant's sentence for his weapons offense as 1½ to 5 years' incarceration. Accordingly, on August 15, 2023, the court issued an amended sentencing order correcting his sentence to reflect the term of 2½ to 5 years' imprisonment.

and life expectancy[,] in violation of *Miller*, *Montgomery*, and their progeny?

4. Did the [trial] court err by imposing a sentence that fails to provide for a "meaningful opportunity for release" as required by *Miller* and *Montgomery*?

5. Did the [trial] court err by failing to consider [Appellant's] remorse, acceptance of responsibility, and considerable rehabilitation while serving 31[ plus] years of a sentence of LWOP with no prospect or hope of ever being released from prison prior to the decision in *Miller* and *Montgomery*?

6. Did the [trial] court err by failing to consider the unique community of individuals that will support [Appellant's] release into society and provide resources to [Appellant] to ensure a safe and positive re-entry into the general population while maintaining adequate supervision over [Appellant] through the state parole system?

7. Did the [trial] court err by failing to grant [Appellant's] PCRA [p]etition insomuch as the same requested relief relating to the protections [Appellant] should have been afforded as a juvenile prior to entering a guilty plea on November 5, 1992? Specifically, since it has been judicially determined that [Appellant] was under the age of 18 at the time the offense was committed, [Appellant] should have been afforded certain constitutional rights during the investigation and court proceedings[,] such as the right to have an adult present during interrogations and the opportunity to seek decertification of the legal proceedings from the adult criminal justice system to the juvenile criminal justice system.

8. Did the [trial] court err by failing to re-sentence [Appellant] on Count 2 and Count 5 and leaving [Appellant's] original sentence on both counts undisturbed?

9. Did the [trial] court err by failing to re-sentence [Appellant] on Count 2 and Count 5, [and] … by not starting "afresh" and restructuring its entire sentencing scheme as required by *Commonwealth v. Losch*, 535 A.2d 115 (Pa. Super. 1987)[,] and *Commonwealth v. Davis*, 262 A.3d 589 (Pa. Super. 2021)?

Appellant's Brief at 5-7.

Appellant's first four issues are related and will be addressed together. Appellant challenges the legality of his sentence, contending that his aggregate term of 52½ years' to life imprisonment constitutes a *de facto* life sentence, which deprives him of any meaningful opportunity to obtain release. **See Commonwealth v. Felder**, 269 A.3d 1232, 1240 (Pa. 2022) (construing a claim that "a 50-year minimum sentence is a *de facto* life sentence" as a challenge to the legality of the sentence).[3] According to Appellant, he demonstrated that he "is capable of change and rehabilitation" and, consequently, "a sentence of life or *de facto* life in prison without parole is disproportionate punishment under the Eighth Amendment" and violates **Miller** and the cases issued in its wake. Appellant's Brief at 29, 31.

Appellant's arguments are unconvincing and unsupported by the record. First, we briefly summarize the pertinent points of **Miller**, **Montgomery**, and their progeny. In **Miller**, the United States Supreme Court held that mandatory LWOP sentences for juvenile homicide offenders are prohibited under the Eighth Amendment. **See Miller**, 567 U.S. at 489. In **Montgomery**, the High Court held that **Miller** applies retroactively to cases on collateral appeal. **See Montgomery**, 577 U.S. at 212.

Following **Miller** and **Montgomery**, the Pennsylvania Supreme Court held in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017), that there is a

---

[3] Appellant also avers that his sentence of 40 years' to life incarceration for first-degree murder is also a *de facto* life sentence, in and of itself. **See** Appellant's Brief at 30-31.

presumption against the imposition of an LWOP sentence for juveniles, *id.* at 452, and that such a sentence may only be imposed where the Commonwealth proves that "the juvenile is constitutionally eligible for the sentence beyond a reasonable doubt." *Id.* at 455. This requires a demonstration "that the juvenile offender is permanently incorrigible and that rehabilitation would be impossible." *Id.* at 459.

However, in 2021, the United States Supreme Court decided *Jones v. Mississippi*, 593 U.S. 98 (2021), narrowing the *Batts* Court's interpretation of *Miller* and *Montgomery* by rendering the following holdings:

> First, a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18. Second, an on-the-record sentencing explanation is not required by or consistent with *Miller*. Although States may require sentencers to make extra factual findings before sentencing an offender under 18 to life without parole or direct sentencers to formally explain on the record why a life-without-parole sentence is appropriate notwithstanding the defendant's youth, the federal constitution does not demand those particular policy approaches. In short, in a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient.

*Felder*, 269 A.3d at 1242 (cleaned up; footnote omitted).

In light of *Jones*, our Supreme Court in *Felder* reevaluated the requirements for sentencing juvenile homicide offenders. In that case, the appellant — who was 17 when he committed first-degree murder — was resentenced under *Miller* to 50 years' to life incarceration. *Id.* at 1240. On appeal, Felder argued that he had received a *de facto* life sentence, which

J-S42036-24

under **Batts** required a showing of permanent incorrigibility that was not met in his case. **Id.** at 1241. Ultimately, our Supreme Court was constrained to disagree with Felder in light of the High Court's decision in **Jones**. The **Felder** Court first reiterated that,

> under the current state of Eighth Amendment law as expressed by **Jones**, "a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." **Jones**, [593 U.S. at 105]. A life-without-parole sentence for a juvenile murderer is thus constitutional, and hence no viable **Miller** claim exists, "so long as the sentence is not mandatory — that is, [] so long as the sentencer has discretion to consider the mitigating qualities of youth and impose a lesser punishment." **Id.** at [106] (internal quotations and citations omitted).

**Id.** at 1243.

The **Felder** Court then determined that, pursuant to **Jones**, "the procedural protections [it had] adopted in **Batts** … cannot stand in their current, judicially-created form." **Id.** Thus, the Court found it was

> [l]eft with no choice but to dissolve those procedural requirements in **Batts** [] that are not constitutionally required — namely, the presumption against sentencing a juvenile homicide offender to [LWOP], and the imposition on the Commonwealth of the burden of proving beyond a reasonable doubt that the juvenile is permanently incorrigible. Moving forward, the authority of a sentencing court to impose a[n LWOP] sentence on a juvenile homicide offender is circumscribed only to the extent set forth in 42 Pa.C.S. § 9721(b) and 18 Pa.C.S. § 1102.1,[4] and by **Miller's**

---

[4] Section 9721(b) requires, *inter alia*, that the trial court "consider any guidelines for sentencing and resentencing[,]" and "that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. §
*(Footnote Continued Next Page)*

- 11 -

command to "consider the mitigating qualities of youth." ***Miller***, 567 U.S. at 476 … (internal quotations and citation omitted).

***Id.*** at 1244-45 (footnotes omitted).

Next, the ***Felder*** Court "turn[ed] … to the purported *de facto* life sentence" claimed by Felder, and again found "that ***Jones*** controls." ***Id.*** at 1245. The Court declared:

> To put it simply, even if a 50-years-to-life sentence amounts to a *de facto* life sentence, "there is no ***Miller*** problem here." ***United States v. Grant***, 9 F.4th 186, 197 (3rd Cir. 2021) (*en banc*). This is because ***Miller's*** bar on mandatory [LWOP] sentencing regimes "is a prophylactic that entitles a juvenile homicide offender to a certain sentencing process, but not a particular sentencing outcome[.]" ***Id.*** at 193. Indeed, permanent incorrigibility is "not an eligibility criterion akin to sanity or a lack of intellectual disability[,]" rather it is "a sentencing factor akin to a mitigating circumstance." ***Jones***, [593 U.S. at 107, 108]. For that reason, ***Miller*** "mandated only that a sentencer follow a certain process — considering an offender's youth and attendant characteristics — before imposing a life-without-parole sentence." ***Id.*** at [101] (internal quotations and citations omitted); ***see also Grant***, 9 F.4th at 200 ("What matters for ***Miller*** purposes is whether the sentencer considered a juvenile homicide offender's youth and attendant characteristics before sentencing him or her to [life without parole].").
>
> It logically and necessarily follows that if a discretionary sentencing scheme is constitutionally sufficient to permit the imposition of a[n LWOP] sentence on a juvenile homicide offender, so too can a court impose a sentence that is something less than life without parole. This includes a term-of-years sentence that may amount to a *de facto* life sentence. Stated differently, as long as the sentence was the product of a discretionary sentencing

---

9721(b). Section 1102.1 sets forth the mandatory-minimum sentences applicable to juveniles convicted of first or second-degree murder, and the factors a court must consider when imposing an LWOP sentence on a juvenile. ***See*** 18 Pa.C.S. § 1102.1(a), (c), (d).

system that included consideration of the juvenile's youth, the Eighth Amendment is satisfied.

*Felder*, 269 A.3d at 1244-46.

Finally, applying *Miller*, *Montgomery*, and *Jones* to the facts at hand,

the *Felder* Court found that

> the record makes clear that [Felder] received the constitutionally required procedure guaranteed by *Miller* and the Eighth Amendment. In resentencing [Felder], the court had before it the parties' presentence memoranda, psychological reports, school records, and victim impact statements. It heard testimony from [Felder] and his mother and read a letter from his cousin. It considered the parties' arguments and evidentiary presentations made at the resentencing hearing. It reviewed lengthy contemporaneous notes taken during both the trial of this case and during the initial sentencing proceeding. And it contemplated, on the record, every one of the twelve factors enumerated in *Miller* and [*Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013)].[5] This process was more than enough to meet the constitutional standard.

*Id.* at 1246 (cleaned up).

---

[5] In this 2013 *Batts* decision, our Supreme Court vacated Batts' mandatory LWOP sentence and remanded for resentencing under *Miller*, directing that the trial court should consider the following factors in fashioning a minimum sentence for a juvenile homicide defendant:

> At a minimum … consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts*, 66 A.3d at 297 (citations omitted). The 2017 *Batts* decision, which the *Felder* Court found was overturned by *Jones*, was the result of Batts' appeal following his resentencing.

Given our Supreme Court's application of *Miller* and its progeny in *Felder*, we need not address whether Appellant's sentence for first-degree murder, or his aggregate term of incarceration as a whole, constitutes a *de facto* life term because, even if true, there is no *Miller* problem. The record demonstrates that Appellant's sentence was discretionary, and the court considered his youth in fashioning his term of imprisonment.

Specifically, the court took into account the testimony of the five witnesses called by Appellant and the four witnesses called by the Commonwealth. It also heard Appellant's testimony and the arguments by the parties, during which defense counsel repeatedly referred to Appellant's youth at the time of the offense, and discussed his difficult childhood. N.T. at 116-20, 127. Defense counsel emphasized that Appellant's brain development at 16 or 17 when he committed the crime, especially considering the difficulties he experienced during the first 16 years of his life, were important factors for the court to consider in fashioning his sentence. *Id.* at 127. The court also had the benefit of a presentence investigation report that it reviewed, as well as sentencing memoranda prepared by the parties. *Id.* at 129, 142. The court considered "the sentencing guidelines,[6] the facts of the crime, the protection of the public, the gravity of the offense as it relates

_____

[6] The court stated that it considered the sentencing guidelines in place in 1992 when Appellant committed his crimes, as well as guidelines established after *Miller* was decided in 2012, which called for a standard-range sentence of 420 months to life. N.T. at 142, 143. The court recognized those new guidelines were "not something that [it was] required to use," but that "[t]hey're a guide" that the court reviewed. *Id.* at 143.

- 14 -

to impact on the life of the victim and the community[,] and the rehabilitation needs of [Appellant]." *Id.*

Additionally, the trial court explained that it took into account the following factors:

> The impact of the offense on each victim, including [the] oral and written victim impact statements, which I have obviously reviewed from the Bunchalk family. The impact of the offense on the community. The [risk to the] safety of the public and to any individual posed by [Appellant]. The nature and circumstances of the offense committed by [Appellant]. The degree of [Appellant's] culpability. It's obviously 100 percent in this case.
>
> Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing: Age-related characteristics of [Appellant], his age at the time of the offense, his mental capacity, his maturity, and a very, very important factor, the degree of criminal sophistication exhibited by [Appellant].
>
> This was a planned murder. Not a planned robbery. This was a robbery to cover up a murder. Sir, you went there with the intent to kill Mark Bunchalk. You basically planned this. You bought a gun three weeks before. You went to the KFC looking for him, scouting the scene three or four days before. You fashioned a silencer. Think about that in 1992. Now you go on Google and say[, "]how do you make a silencer[,"] and you get it in five seconds. Back in 1992, there was no Google and no internet, sir. That means you had to get a book or go to the library and research how to fashion a silencer. This was a premeditated murder. Not a robbery. You took the money to cover up a murder and you deprived the Bunchalk family of Mark for the last 31 years.
>
> I also looked at the nature and the extent of any prior delinquency. You had no prior record. [I also looked at p]robation or institutional reports and obviously [the] mitigating … qualities of youth and rehabilitation.

I would like to talk to you about the difference between you and Mr. Holbrook.[7]  Mr. Holbrook was part of a gang.  He was a 16 year-old child where more mature gang members requested his assistance in a homicide.  He didn't pull the trigger.  He drove a car and acted as a lookout.  You, sir, are [in] a different situation.  You pulled the trigger nine times.  You executed Mr. Bunchalk because you wanted to.  So you should be treated differently than Mr. Holbrook has been treated with regards to his crime.

[The] *Miller* factors are as follows:

Immaturity, failure to appreciate risks or consequences, the family and home environment that surrounds him, circumstances of the offense, including the extent of his participation and the conduct and the way familiar [*sic*] or peer pressure might have affected him.  That he might have been charged and convicted of a lesser offense, if not for the incompetency associated with his youth.  For example, his inability to deal with police officers or prosecutors or his incapacity to assist … his own attorneys and the possibility of rehabilitation.  I have also reviewed the *Miller* factors.

[Appellant], I sit in a very unique situation.  I am, too, the product of adoption.  I spent the first 18 months of my life in an orphanage in California.  My teenage natural birth mother walked away from me because I had some physical problems when I was born.  So I spent 18[] months in an orphanage, just like you.  I understand what it's like to be adopted.  To go into a family that you don't look like.  A family that you don't relate to.  A family that – why are my parents much older than all the other parents when I go to school.  I understand that, sir.  I understand what happens when you're adopted and what happens when you go through an adoption process.  I understand that.  I understand what you went through.  But nothing about an adoption entitles you to do what you did in this case, sir.

So now it's my job to balance.  To balance what you've done since you've been incarcerated.  What you've accomplished and the pain and anguish that you caused the Bunchalk family.  But I also want

---

[7] As stated *supra*, Mr. Holbrook had been a fellow prisoner with Appellant and testified on his behalf at the resentencing.  Mr. Holbrook testified that he spent 27 years in prison after he was involved in a homicide at the age of 16.  *See* N.T. at 47-50.

to speak for Mark Bunchalk. I have to balance his needs and what you did to him, sir. Not an easy thing to do.

I want to express my condolences to the Bunchalk family for what you've gone through in this case and the loss of your son. And the fact that you had to find your son in that circumstance is horrific.

[Appellant], you've done wonderful things in prison. I've reviewed everything. You built a community of people that love you. People that want to come here and testify on your behalf. You've made friends. You've been involved in book projects. You've been involved in a movie. You've been involved in a documentary. Your art has been published and it's been displayed all over this country and all over this world. But Mark Bunchalk had no opportunity to do any of that, sir. You took that away from him selfishly when he was 17 years old.

So now I have to balance all of those factors in determining a sentence and it was a sleepless night, to say the least. I think I've come up with a sentence that balances the rehabilitation efforts of [Appellant] and the punishment that he needs … for what he did to Mr. Bunchalk.

*Id.* at 143-47. The court then imposed a sentence of 40 years' to life incarceration for Appellant's murder conviction, and left in place his consecutive terms of 10 to 20 years' imprisonment, and 2½ to 5 years' imprisonment, that had been originally imposed for his offenses of robbery and prohibited offensive weapons. *Id.* at 147.

Based on this record, we conclude that, as in *Felder*, Appellant received the constitutionally-required procedure guaranteed by *Miller* and the Eighth Amendment. The court thoroughly considered all pertinent factors, including Appellant's age at the time of the murder. The process undertaken by the trial court was more than adequate to meet the constitutional standard set forth in *Miller* and elucidated in *Jones*. Accordingly, even if the court imposed

a *de facto* life sentence, Appellant's constitutional rights were not violated. No relief is due on his first four issues.

In Appellant's fifth and sixth issues, which are also inter-related, he contends that in resentencing him, the trial court improperly focused only on the seriousness of his crimes and failed to consider "any of the mitigating factors" such as "his remorse, rehabilitation or community supports." Appellant's Brief at 30, 37. He also claims that the court erred by failing to "acknowledge [his] acceptance of responsibility when imposing [his] sentence." *Id.* at 37. Moreover, Appellant avers that the trial court did not "adequately consider the unique community of individuals who provided support for [him] during the resentencing hearing and were willing to continue to provide support in any way needed." *Id.* at 38.

Appellant's arguments challenge the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912, 918 (Pa. Super. 2010) (construing a claim that the court failed to consider mitigating circumstances as a challenge to the discretionary aspects of his sentence).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence

> appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006).  Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.  ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007).  A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, preserved his claims in a post-sentence motion, and sets forth a Rule 2119(f) statement in his appellate brief.  ***See*** Appellant's Brief at 21-22.  Therein, he argues that the court failed to properly consider the mitigating circumstances of his case.  Generally, "an allegation that the sentencing court failed to consider mitigating factors … does not raise a substantial question for our review." ***Rhoades***, 8 A.3d at 918-19.  "Moreover, where, as here, the sentencing court had the benefit of a pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Id.*** at 919 (quoting ***Moury***, 992 A.2d at 171) (internal quotation marks omitted).

Thus, we conclude that Appellant has not set forth a substantial question for our review.

Nevertheless, even if he had, no relief would be due. It is well-settled that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Instantly, the court's statements at the sentencing hearing, reproduced *supra*, belie Appellant's arguments that the court failed to consider the mitigating circumstances in this case. Clearly, the court took into account the testimony of Appellant's witnesses, the support they are willing to offer him when he is released, and the progress and rehabilitation he has exhibited while incarcerated. Additionally, the court took into account Appellant's remorse, and that he accepted responsibility by pleading guilty. However, the court also considered the aggravating factors in this case, such as the egregiousness of Appellant's crimes, the premeditation and criminal sophistication with which he acted, and the devastating impact Appellant's actions had on the victim's family and the community. The court carefully and thoughtfully balanced the mitigating and aggravating factors in this case in fashioning the sentence it ultimately imposed. Therefore, even if Appellant had presented a substantial

- 20 -

question for our review, we would not discern any abuse of the court's ample discretion in determining his sentence.

In Appellant's seventh issue, he contends that his guilty plea was illegally entered because he was "prosecuted and processed as an adult despite being a juvenile and without juvenile protections." Appellant's Brief at 39. He insists that, "[i]f [he] was unable to be sentenced as an adult pursuant to *Miller*, one must also conclude that he should not have been interrogated or his items of personal property searched without the protections afforded to other juveniles." *Id.*

Again, no relief is due. Appellant raised this claim in his PCRA petition filed in 2016, and the *Tarselli I* panel rejected it as untimely, concluding that Appellant "ha[d] not established diligence with regard to those claims." *Tarselli I*, No. 360 MDA 2020, unpublished memorandum at 5 n.4. The panel reasoned that Appellant

> knew at the time of trial that he was adopted and that he was, even by his recorded date of birth, less than three months into his legal adulthood when the crime occurred. We cannot find that a petition claiming that he should have been treated and processed as a juvenile is timely filed decades after his plea. To the extent Appellant seeks such relief here, we affirm the PCRA court's denial of relief.

*Id.* Because this Court has already concluded that Appellant's attempt to challenge the validity of his guilty plea was untimely, we are bound to reach the same decision herein. *See Commonwealth v. McCormick*, 772 A.2d 982, 984 n.1 (Pa. Super. 2001) (recognizing that this Court "may not overrule" prior panels of this Court); *Commonwealth v. Pepe*, 897 A.2d 463, 466 (Pa.

Super. 2006) ("As a subsequent panel reviewing an issue already decided by a panel of this Court, we are obligated to follow the law as articulated by the previous panel.").

Finally, we address together Appellant's eighth and ninth issues, in which he argues that the trial court erred by failing to resentence him for his convictions of robbery and prohibited offensive weapons. First, Appellant claims these sentences are illegal, because "*Miller* and *Montgomery* and their progeny require that the sentencing court consider a defendant's youth at the time of sentencing[,]" and, here, the trial court "failed to consider [Appellant's] youth when simply leaving the robbery and possession of offensive weapons counts undisturbed." Appellant's Brief at 32. However, Appellant cites no legal authority to support his argument that *Miller* and *Montgomery* apply to sentencing juvenile offenders for *non-homicide* convictions. Therefore, this argument is meritless.

Appellant also contends that the trial court erred by concluding that the *Tarselli I* panel did not vacate his sentences for robbery and prohibited offensive weapons. Instead, the trial court concluded that those terms of incarceration must remain undisturbed. *See* N.T. at 142 ("Clearly the Superior Court, when they sent the case back to me, did not mention one word about count two or count five. So it's this [c]ourt's intention to leave count two, the [10] to 20 years consecutive[,] and count five, [the 2½] to [5] years consecutive to count two[,] in place and not disturb those sentences."). In its Rule 1925(a) opinion, the court explained:

> *Miller* and *Montgomery* apply to juvenile homicide offenders and there was nothing in the [*Tarselli I*] opinion which required resentencing on the robbery and prohibited offensive weapons charges. The sentences on those offenses were left undisturbed since the Superior Court did not require resentencing on those offenses and *Miller* only applied to [Appellant's] first[-]degree murder sentence. On September 19, 1994, the sentences imposed on the robbery and weapons charges were affirmed in a second appeal to the Superior Court[,] and a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was denied on April 24, 1995.

TCO at 8-9.

In disagreeing with the trial court, Appellant insists that in *Tarselli I*, this Court "did not remand for resentencing solely on the first-degree murder charge." Appellant's Brief at 3 (unnecessary capitalization omitted). He claims that, instead, the *Tarselli I* panel's

> remand for resentencing was a directive that the [trial c]ourt devise an entirely new sentencing scheme. Allowing two (2) non-homicide related counts to remain undisturbed stopped the [trial c]ourt from developing and devising its own sentencing scheme as required by law. The entire sentence should have been resentenced to comply with decades of precedent on this issue.

*Id.* at 34.

In support, Appellant cites cases where this Court has held that, "[w]hen a sentence is vacated and the case remanded for resentencing, the sentencing judge should start afresh." *Id.* (quoting *Losch*, 535 A.2d at 121; emphasis omitted). Additionally, he stresses that "the courts of our Commonwealth have specifically held that if a trial court errs in its sentence on one count in a multi-count case, then *all* sentences for *all* counts will be vacated so the court

can restructure its entire sentencing scheme." *Id.* (citing *Davis*, 262 A.3d at 599) (emphasis added by Appellant). Appellant also argues that,

> it is logical to assume that at the time [he] was sentenced to life without the possibility of parole, any other sentence imposed was nothing more than a formality. Nobody can be incarcerated for longer than their natural life. A sentence of life without parole plus 100 years consecutive to the life sentence has the same practical effect as a life sentence without parole. By leaving the remaining two (2) charges undisturbed, the [trial c]ourt left two (2) sentences undisturbed that had no impact, no meaning, and no effect at the time they were imposed.

*Id.* at 35-36.

After carefully reviewing the record in this case, and the pertinent legal authority, we agree with Appellant that the trial court should have considered this Court's decision in *Tarselli I* as vacating his entire sentence and requiring resentencing on all counts, including his convictions for robbery and possession of an offensive weapon. We recognize that the *Tarselli I* panel did not explicitly say that it was vacating Appellant's sentences for robbery and prohibited offensive weapons. However, the panel also did not state that it was **only** vacating and remanding for resentencing **on his LWOP sentence**. *See Tarselli I*, No. 360 MDA 2020, unpublished memorandum at 10 ("[W]e reverse and remand for resentencing consistent with the requirements of *Miller* and *Montgomery*."). In light of the ambiguity in the resentencing directive, we presume that the intent of the *Tarselli I* panel was to align with the well-settled law that "[i]f our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." *Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa.

Super. 2006) (citations omitted); ***Commonwealth v. Bartrug***, 732 A.2d 1287, 1289 (Pa. Super. 1999) (holding that if a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can restructure its entire sentencing scheme) (citing ***Commonwealth v. Vanderlin***, 580 A.2d 820, 831 (Pa. Super. 1990) (citation and quotation omitted)). ***See also Commonwealth v. Williams***, 871 A.2d 254, 266 (Pa. Super. 2005) (holding that, where a trial court errs with regard to the sentence imposed for one offense in a case involving several convictions, it is proper to vacate the sentences for all the convictions and to remand so that the sentencing court has the opportunity to restructure its entire sentencing scheme) (citing, *inter alia*, ***Commonwealth v. Goldhammer***, 517 A.2d 1280 (Pa. 1986); ***Commonwealth v. Sutton***, 583 A.2d 500, 502 (Pa. Super. 1990) (citing ***Goldhammer, supra***, for the proposition that "the proscriptions against double jeopardy do not prevent us from remanding for re[-]sentencing on all bills of information where our vacation of various related counts has upset the trial court's sentencing scheme")).

Here, Appellant's original sentence for first-degree murder was LWOP and, thus, the consecutive terms of 10 to 20 years for robbery, and 2½ to 5 years for prohibited offensive weapons, had no impact on the aggregate sentence. The ***Tarselli I*** panel's determination that Appellant's LWOP sentence must be reversed caused his other two, consecutive sentences to have a new and different impact; namely, it added a total of 12½ to 25 years

to Appellant's aggregate sentence. Clearly, this changes the overall sentencing scheme in this case. Moreover, this Court has found that where consecutive sentences are imposed, vacating one count upsets the overall sentencing scheme. *See Commonwealth v. Tanner*, 61 A.3d 1043, 1048 (Pa. Super. 2013) ("[S]ince the trial court required that [the a]ppellant serve her [driving under the influence] sentence consecutive to her other sentences, our disposition has disturbed the trial court's overall sentencing scheme. Therefore, we vacate [the a]ppellant's judgment of sentence in its entirety and remand for resentencing.") (citation omitted).

Finally, we note that it does not matter that our Court affirmed Appellant's sentence pre-*Miller*, as the trial court mentioned and the Commonwealth contends. *See* Commonwealth's Brief at 37 (arguing that "the law of the case doctrine prohibits resentencing [for] the two additional charges" because "Appellant's case had been reviewed on appeal twice" and "[i]n neither appeal was the consecutive 12[½ to] 25 year sentence disturbed or vacated"). Those prior appeals did not disrupt Appellant's aggregate LWOP sentence. However, once this Court determined in *Tarselli I* that Appellant's mandatory LWOP sentence was illegal under *Miller* and its progeny, vacating that sentence necessarily disturbed the original sentencing scheme of an aggregate LWOP sentence.

Thus, it was appropriate for the *Tarselli I* panel to vacate Appellant's entire judgment of sentence to allow the trial court to restructure his aggregate term, and we presume the *Tarselli I* panel intended this result.

Accordingly, we vacate Appellant's judgment of sentence in its entirety, and remand for resentencing on all charges.[8]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2025

---

[8] Nothing in our decision limits the trial court from imposing the same sentence for Appellant's murder conviction, or the same, consecutive terms of incarceration for his robbery and prohibited offensive weapons offenses. Rather, the court must simply determine what sentences are appropriate for each of Appellant's convictions after considering the requisite sentencing factors and individual circumstances of Appellant's case.